**TERRY GODDARD**
Arizona Attorney General
Firm State Bar No. 14000
**JEFFREY D. CANTRELL (017957)**
**TAMARA L. HUDDLESTON (006890)**
Assistant Attorney General
Office of the Attorney General
1275 West Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8500
Environmental@azag.gov
Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona; State of Arizona *ex rel.* Benjamin H. Grumbles, Director, Arizona Department of Environmental Quality, | No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| Ashton Company, Inc.; Contractors and Engineers; Baldor Electric Company; Don Mackey Oldsmobile-Cadillac, Inc.; Dunn Edwards Corporation; Durodyne, Inc.; Fersha Corporation; Fluor Corporation; General Dynamics Corporation; The Goodyear Tire and Rubber Company and Lockheed Martin Corporation; Holmes Tuttle Ford, Inc.; Industrial Pipe Fittings, LLC and Tucson Foundry & Manufacturing, Inc.; Rowe Enterprises, Inc.; Pima County Community College; Rollings Corporation; Textron, Inc. and ABB, Inc. and Combustion Engineering, Inc.; | **Cost Recovery Under the Comprehensive Environmental Response, Compensation, and Liability Act** **Declaratory Judgment** **Cost Recovery Under the Arizona Water Quality Assurance Revolving Fund** |

1

1  **Texas Instruments, Inc.; Tucson Dodge;**
2  **Inc.; and, Warner Propeller and**
3  **Governor, L.L.C.,**

4                    **Defendants**.

5        Plaintiffs State of Arizona and the State of Arizona *ex rel*. Benjamin H. Grumbles,

6  Director of the Arizona Department of Environmental Quality allege:

7                    **I.        NATURE OF THIS ACTION**

8        1.        Plaintiff State of Arizona ("State") is a sovereign state of the United States

9  of America.

10       2.        The Arizona Department of Environmental Quality ("ADEQ") is an agency

11  of the State and was established in 1986 pursuant to A.R.S. § 49-102(A).

12       3.        On 22 June 2009, the Governor of the State of Arizona designated

13  Benjamin H. Grumbles as the Director of ADEQ.

14       4.        This is a civil action brought by the State, pursuant to the Comprehensive

15  Environmental Response, Compensation, and Liability Act of 1980, as amended

16  ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.* and pursuant to supplemental state law causes of

17  action under the Water Quality Assurance Revolving Fund ("WQARF") A.R.S. § 49-281

18  *et seq*. This action is brought to recover necessary costs of response incurred or to be

19  incurred by Plaintiffs to respond to a Release or threat of a Release of hazardous

20  substances at and from the Broadway Pantano WQARF Registry Site #100053-00 in

21  Tucson, Pima County, Arizona.

22       5.        The Broadway Pantano Landfill ("Site"), as defined herein, encompassing

23  approximately 150 acres located in east-central Tucson, Pima County, Arizona and is

24  approximately bounded by Speedway Boulevard to the north, Pantano Wash to the east,

25  Calle Madero to the south (south of Broadway Boulevard), and Craycroft Road or Kolb

26

Avenue for the portion of the Site to the south of Broadway Boulevard and includes the geographical areal extent of contamination as depicted on the map attached hereto as Exhibit 1.

6.     The Site comprises the Broadway South and Broadway North Landfills. The Broadway South Landfill was operational from approximately 1953 to 1959, and the Broadway North Landfill was operational from approximately 1959 to 1972.

7.     The Broadway Pantano WWQARF Registry Site is a Site as that term is defined in A.R.S. § 49-281(14) and used in 42 U.S.C. § 9601, and is also a Facility as defined in 42 U.S.C. § 9601(9) and A.R.S. § 49-281(6).

8.     During the period between 1953 and 1972, two landfills were operational at the Site which accepted hazardous industrial wastes from various entities. The Site was originally a "wildcat" dump and later developed into two separate landfills. The Broadway South Landfill was initially operated by Pima County and then by Sanitary District No. 1 of Pima County. The Broadway North Landfill was jointly operated by Sanitary District No. 1 of Pima County and the City of Tucson, and later jointly operated by Pima County and the City of Tucson. During this time, various hazardous wastes generators arranged for those wastes to be transported to the landfills. Some of the hazardous substances have migrated from the landfills and contaminated the drinking water aquifer underneath the landfills. Additionally, some of the hazardous substances have migrated off-site from the landfills, further spreading contamination.

## II.     JURISDICTION AND VENUE

9.     This Court has exclusive and original jurisdiction over all CERCLA claims 42 U.S.C. §§ 9607 and 9613(b). Additionally, this Court has federal question jurisdiction over the subject matter and the Parties under 28 U.S.C. §§ 1331 and 1391. This Court has supplemental jurisdiction over state law (WQARF A.R.S. §§ 49-285 and 49-292) claims pursuant to 28 U.S.C. § 1367(a) because they arise out of a common nucleus of operative

1   facts and are so related to the federal question claims that they form a part of the State's

2   federal (CERCLA) claims.

3         10.    Pursuant to 42 U.S.C. § 9613(b) (CERCLA §113(b)) and 28 U.S.C. §

4   1391(b), proper venue lies with the United States District Court for the District of

5   Arizona Tucson division because the releases of hazardous substances occurred in the

6   Pima County, Arizona.

7         11.    After this action is filed, the State will mail copies of this Complaint to the

8   Attorney General of the United States and to the Administrator of the United States

9   Environmental Protection Agency, in accordance with Section 113(l) of CERCLA, 42

10   U.S.C. § 9613(l).

11   **III.   PLAINTIFFS**

12         12.    Plaintiff State of Arizona is a State of the United States of America. This

13   action has been brought on behalf of the ADEQ, and its Director, Benjamin H. Grumbles.

14   Mr. Grumbles is the duly appointed Director of ADEQ and is authorized pursuant to

15   A.R.S. §§ 49-102(B), 49-202(L), 49-287(C), and 38-211, Arizona Revised Statutes to

16   initiate this action on behalf of the State.

17   **IV.   DEFENDANTS**

18         13.    <u>Ashton Company, Inc., Contractors and Engineers</u> - Defendant The Ashton

19   Company, Inc., Contractors and Engineers, an Arizona corporation, operated a general

20   contracting and construction business in Tucson, Arizona, from as early as 1957 through

21   the 1970s, during which time the Broadway South and North Landfills were operational.

22   Defendant The Ashton Company, Inc., Contractors and Engineers, owned or possessed

23   hazardous substances that contained Site contaminants of concern such as

24   trichloroethylene ("TCE") and Tetrachloroethylene ("PCE").  A former City of Tucson

25   Sanitation Department waste hauler collected waste from The Ashton Company, Inc.,

26   Contractors and Engineers, and transported the waste to the nearest landfill, including the

Broadway North Landfill. The Ashton Company, Inc., Contractors and Engineers, owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

14.   <u>Baldor Electric Company</u> - Defendant Baldor Electric Company, an Arkansas corporation, is the successor by merger to Reliance Electric Company, an Ohio corporation, which was a contractor to the U.S. Air Force at the Titan II missile silos in Tucson, Arizona, in the 1960s, during which time the Broadway North Landfill was operational. Defendant Baldor Electric Company's predecessor, Reliance Electric Company, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE and PCE. A former Tucson-area solvent recycler collected waste from Reliance Electric Company and transported the waste to the Broadway South and North Landfills. Reliance Electric Company owned or possessed the hazardous substances and arranged for the disposal of those substances.  Therefore, its successor, Baldor Electric Company, is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

15.   <u>Don Mackey Oldsmobile-Cadillac, Inc.</u> - Defendant Don Mackey Oldsmobile-Cadillac, Inc., a Delaware corporation, sold and maintained automobiles under the name Paulin Motor Company, a Delaware corporation, in Tucson, Arizona, from as early as 1952 through the early 1970s, during which time the Broadway South and North Landfills were operational. Defendant Don Mackey Oldsmobile-Cadillac, Inc., operating under the name Paulin Motor Company, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride. A former City of Tucson Sanitation Department waste hauler collected waste from Paulin Motor Company and transported the waste to the nearest landfill, including the Broadway North Landfill. Paulin Motor Company owned or possessed the hazardous substances and arranged for the disposal of those substances.

Therefore, its successor, Don Mackey Oldsmobile-Cadillac, Inc., is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

16.    Dunn-Edwards Corporation - Defendant Dunn-Edwards Corporation, a Delaware corporation, operated a retail paint business in Tucson, Arizona, from as early as 1961 through the 1970s, during which time the Broadway North Landfill was operational. Defendant Dunn-Edwards Corporation owned or possessed hazardous substances that contained Site contaminants of concern such as methylene chloride. A former City of Tucson Sanitation Department waste hauler collected waste from Dunn-Edwards Corporation and transported the waste to the nearest landfill, including the Broadway North Landfill. Dunn-Edwards Corporation owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

17.    Durodyne, Inc.  - Defendant Durodyne, Inc., an Arizona corporation, operated an industrial hose manufacturing facility at the Tucson International Airport in Tucson, Arizona, beginning in 1976. Defendant Durodyne, Inc., owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride.  A former Tucson-area solvent recycler collected waste from Durodyne, Inc., and transported the waste to the Broadway South and North Landfills after the landfills had ceased operations and had become wildcat dumps. Durodyne, Inc., owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

18.    Fersha Corporation- Defendant Fersha Corporation, an Ohio corporation, is the successor by merger to Tucson One Hour, Inc., an Ohio corporation, which operated multiple One Hour Martinizing franchise dry cleaning facilities in Tucson, Arizona, in the 1960s and 1970s, during which time the Broadway South and North Landfills were operational. Defendant Fersha Corporation's predecessor, Tucson One Hour, Inc.,

operating under the name One Hour Martinizing, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE and PCE. A former City of Tucson Sanitation Department waste hauler collected waste from One Hour Martinizing and transported the waste to the nearest landfill, including the Broadway North Landfill. Tucson One Hour, Inc., owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, its successor, Fersha Corporation, is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

19.    Fluor Corporation- Defendant Fluor Corporation, a Delaware corporation, operated as a contractor to the U.S. Army Corps of Engineers at the Titan II missile silos in Tucson, Arizona, in the 1960s, during which time the Broadway North Landfill was operational.  Defendant Fluor Corporation owned or possessed hazardous substances that contained Site contaminants of concern such as TCE. Two former Tucson-area solvent recyclers collected waste from Fluor Corporation and transported the waste to the Broadway South and North Landfills. Fluor Corporation owned or possessed the hazardous substances and arranged for the disposal of those substances.  Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

20.    General Dynamics Corporation - Defendant General Dynamics Corporation, a Delaware corporation, is the successor by merger to Consolidated Aircraft Company, a California corporation, which operated an aircraft modification facility at the Tucson International Airport in Tucson, Arizona, from 1943 to 1948.  Defendant General Dynamics Corporation's predecessor, Consolidated Aircraft Company, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE and methylene chloride. A former Tucson-area solvent recycler collected waste from Consolidated Aircraft Company and transported the waste to the Broadway South and North Landfills when the landfills were used as wildcat dumps. Consolidated Aircraft Company owned or possessed the hazardous substances and arranged for the disposal of

those substances. Therefore, its successor, General Dynamics Corporation, is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

21.     The Goodyear Tire and Rubber Company and Lockheed Martin Corporation - Defendants The Goodyear Tire and Rubber Company, an Ohio corporation, and Lockheed Martin Corporation, a Maryland corporation, are the successors by merger to Goodyear Aerospace Corporation, a Delaware corporation, which operated an aircraft modification and maintenance facility in Goodyear, Arizona, beginning in 1942 under the name Goodyear Aircraft Company and through the 1970s, during which time the Broadway South and North Landfills were operational. Goodyear Aircraft Company changed its name to Goodyear Aerospace Corporation on July 5, 1963. Defendants The Goodyear Tire & Rubber Company's and Lockheed Martin Corporation's predecessor, Goodyear Aerospace Corporation, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride. A former Tucson-area solvent recycler collected waste from Goodyear Aerospace Corporation and transported the waste to the Broadway South and North Landfills. Goodyear Aerospace Corporation owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, its successors, The Goodyear Tire & Rubber Company and Lockheed Martin Corporation, are liable as generators pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

22.     Holmes Tuttle Ford, Inc. - Defendant Holmes Tuttle Ford, Inc., an Arizona corporation, operated a new and used car sales and services business in Tucson, Arizona, from as early as 1958 through the early 1970s, during which time the Broadway South and North Landfills were operational. Defendant Holmes Tuttle Ford, Inc., owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride. Tucson-area waste haulers collected waste from Holmes Tuttle Ford, Inc., and transported the waste to the nearest landfill, including the Broadway North Landfill. Holmes Tuttle Ford, Inc., owned or possessed the hazardous

1  substances and arranged for the disposal of those substances. Therefore, it is liable as a

2  generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

3       23.   <u>Industrial Pipe Fittings, LLC and Tucson Foundry & Manufacturing, Inc.</u> -

4  Defendants Industrial Pipe Fittings, LLC, a Nevada corporation, and Tucson Foundry &

5  Manufacturing, Inc., an Arizona corporation, are the successors by merger and name

6  change, respectively, to Knight Foundry & Manufacturing, Inc., an Arizona corporation,

7  which operated a metal castings manufacturing facility in Tucson, Arizona, beginning in

8  1954, during which time the Broadway South Landfill was operational. Defendants

9  Industrial Pipe Fittings, LLC's and Tucson Foundry & Manufacturing, Inc.'s predecessor,

10 Knight Foundry & Manufacturing, Inc., owned or possessed hazardous substances that

11 contained Site contaminants of concern such as TCE and PCE. A former Tucson-area

12 solvent recycler collected waste from Knight Foundry & Manufacturing, Inc., and

13 transported the waste to the Broadway South and North Landfills. Knight Foundry &

14 Manufacturing, Inc., owned or possessed the hazardous substances and arranged for the

15 disposal of those substances. Therefore, its successors, Industrial Pipe Fittings, LLC, and

16 Tucson Foundry & Manufacturing, Inc., are liable as generators pursuant to 42 U.S.C. §

17 9607(a)(3) and A.R.S. § 49-283(A)(2).

18      24.   <u>Pima County Community College</u> - Defendant Pima County Community

19 College District was formed in 1966 and operated at multiple locations in Tucson,

20 Arizona, through the 1970s, during which time the Broadway North Landfill was

21 operational. Defendant Pima County Community College District owned or possessed

22 hazardous substances that contained Site contaminants of concern such as TCE, PCE, and

23 methylene chloride because it received surplus government property in lots at auctions

24 from Fort Huachuca and Davis-Monthan Air Force Base. These lots included drums of

25 solvent. A former Tucson-area solvent recycler collected waste from Pima County

26 Community College District and transported the waste to the Broadway South and North

Landfills. Pima County Community College District owned or possessed the hazardous

substances and arranged for the disposal of those substances.  Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

25.   Rowe Enterprises, Inc. - Defendant Rowe Enterprises, Inc., an Arizona corporation, is the successor by merger to Precision Motors, Ltd., an Arizona corporation, which operated a car sales and services business in Tucson, Arizona, from 1961 through the early 1970s, during which time the Broadway North Landfill was operational. Defendant Rowe Enterprises, Inc.'s predecessor, Precision Motors, Ltd., owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride.  A former City of Tucson Sanitation Department waste hauler and a former Garbage Service Company of Tucson Arizona, Inc., waste hauler collected waste from Precision Motors, Ltd. and transported the waste to the nearest landfill, including the Broadway North Landfill. Precision Motors, Ltd., owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, its successor, Rowe Enterprises, Inc., is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

26.   Rollings Corporation - Defendant Rollings Corporation, an Arizona corporation, operated a new and used car sales and service facility under the historical name Rollings Motor Company in Tucson, Arizona, from as early as 1954 through the 1970s, during which time the Broadway South and North Landfills were operational. Defendant Rollings Corporation, operating under the name Rollings Motor Company, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE and PCE.  A former City of Tucson Sanitation Department waste hauler collected waste from Rollings Motor Company and transported the waste to the Broadway North Landfill. Defendant Rollings Corporation owned or possessed the hazardous substances and arranged for the disposal of those substances.  Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

27.     Textron, Inc.; ABB, Inc.; and Combustion Engineering, Inc - Defendants Textron, Inc., a Delaware corporation,  ABB, Inc., a Delaware corporation, and Combustion Engineering, Inc., a Delaware corporation, are the successors by merger to Bell Aerosystem Company, a division of Bell Aerospace Corporation, a Delaware corporation, which operated research facilities at the Tucson International Airport, University of Arizona farm, and Davis-Monthan Air Force Base in Tucson, Arizona, in the 1960s, during which time the Broadway North Landfill was operational. Defendants Textron, Inc.'s, ABB, Inc.'s, and Combustion Engineering, Inc.'s predecessor, Bell Aerosystem Company, owned or possessed hazardous substances that contained Site contaminants of concern such as TCE. A former Tucson-area solvent recycler collected waste from Bell Aerosystem Company and transported the waste to the Broadway South and North Landfills. Bell Aerosystem Company owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, its successors, Textron, Inc., ABB, Inc. and Combustion Engineering, Inc., are liable as generators pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

28.     Texas Instruments, Inc. - Defendant Texas Instruments, Inc., a Delaware corporation, is the successor by merger to Burr-Brown Research Corporation, an Arizona corporation, which operated a microelectronic components manufacturing facility at the Tucson International Airport in Tucson, Arizona, in the 1960s, during which time the Broadway North Landfill was operational. Burr-Brown Research Corporation owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride.  Three former Tucson-area solvent recyclers and two former City of Tucson Sanitation Department waste haulers collected waste from Burr-Brown Research Corporation and transported the waste to the Broadway South and North Landfills. Burr-Brown Research Corporation owned or possessed the hazardous substances and arranged for the disposal of those substances.  Therefore, its successor, Texas Instruments, Inc., is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and

A.R.S. § 49-283(A)(2).

29.     <u>Tucson Dodge, Inc.</u> - Defendant Tucson Dodge, Inc., an Arizona corporation, operated a new and used car sales and services business under the name Bill Breck Dodge, Inc., in Tucson, Arizona, from as early as 1959 through the 1970s, during which time the Broadway South and North Landfills were operational. Defendant Tucson Dodge, Inc., operating under the name Bill Breck Dodge, Inc., owned or possessed hazardous substances that contained Site contaminants of concern such as TCE, PCE, and methylene chloride. A former Tucson-area solvent recycler and a former Garbage Service Company of Tucson, Arizona, Inc., waste hauler collected waste from Bill Breck Dodge, Inc., and transported the waste to the Broadway South and North Landfills. Bill Breck Dodge, Inc., owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, its successor, Tucson Dodge, Inc., is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

30.     <u>Warner Propeller and Governor Co. L.L.C.</u> - Defendant Warner Propeller and Governor Co., L.L.C., an Arizona corporation, operated an aircraft repair facility at the Tucson International Airport in Tucson, Arizona, beginning in 1967 through the 1970s, during which time the Broadway North Landfill was operational.  Defendant Warner Propeller and Governor Co., L.L.C., owned or possessed hazardous substances including Site contaminants of concerns such as TCE and methylene chloride.  A former Tucson-area solvent recycler collected waste from Warner Propeller and Governor Co., L.L.C., and transported the waste to the Broadway South and North Landfills. Warner Propeller and Governor Co., L.L.C., owned or possessed the hazardous substances and arranged for the disposal of those substances. Therefore, it is liable as a generator pursuant to 42 U.S.C. § 9607(a)(3) and A.R.S. § 49-283(A)(2).

## V.     ALLEGATIONS APPLICABLE TO ALL COUNTS AND PARTIES

31.     CERCLA, also commonly referred to as "Superfund", was enacted by the United States Congress in 1980 to create a comprehensive approach to identifying and

remedying sites containing hazardous substances. Congress determined that strict and retroactive liability for the costs of remedying such sites should be imposed upon: (1) those who currently own or operate the sites, or those who had owned or operated the sites during a previous time of disposal of any hazardous substances; (2) those who generated hazardous substances which were disposed of at the sites; (3) those who arranged for disposal of hazardous substances at the sites; and (4) those who transported hazardous substances to the sites if they selected the site for disposal. *See* Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

32.     Congress further provided that these persons would be strictly liable for all costs of remedying the sites containing hazardous substances even if at the time of the disposal these persons may have been complying with existing laws. CERCLA's strict liability imposes liability without the need to prove causation upon all persons who fall within CERCLA's definition of Responsible Parties. *See* 42 U.S.C. § 9607(a). CERCLA's judicially imposed joint and several liability scheme generally imposes liability for all costs of remediation upon each responsible party, unless that responsible party can affirmatively demonstrate divisibility of harm.

33.     The Arizona WQARF superfund statutory scheme was enacted in its current form in 1998 and parallels CERCLA in most of its provisions, the main difference being liability under WQARF is strict and several only.

34.     Defendants include Owners or Operators as defined in 42 U.S.C. § 9601(20), A.R.S. § 49-283(A)(1), 9607(a)(2), Generators and Arrangers of hazardous substances under 42 U.S.C. §§ 9607(a)(1), 9607(a)(3), A.R.S. § 49-283(A)(2), and Transporters as defined in 42 U.S.C. §§ 9601(26), 9607(a)(4), A.R.S. § 49-283(A)(3).

35.     The defendants are Persons within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and A.R.S. § 49-201(26), and as used in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

36.     Each of the Defendants may be a Responsible Party as that term is defined in 42 U.S.C. § 9607(a) and A.R.S. § 49-283(B) (3) for the releases and threatened releases of hazardous substances from the Site. Under 42 U.S.C. § 9607(a) and A.R.S. § 49-285, Defendants are strictly and severally liable to the State for all removal, response, and remedial action costs incurred and to be incurred by the State in connection with the release and threatened release of hazardous substances on and from the Site.

37.     Defendants caused events and transactions that included: owning or operating the Site; generating, transporting, storing, treating, arranging, transporting, and disposing of hazardous substances; or knowingly permitted others to engage in such business at the Site, all of which occurred in the State of Arizona, and which give rise to this action.

38.     The substances released at the Site include halogenated volatile organic compounds such as: TCE, PCE, and methylene chloride; their degradation byproducts such as vinyl chloride and Cis-1, 2-dichloroethene; and, soil contaminants such as arsenic, cadmium, chromium, copper, and beryllium. These substances are Hazardous Substances as that term is defined in 42 U.S.C. § 9601(14), A.R.S. § 49-281(8) and as used in 42 U.S.C. § 9607(a) and A.R.S. § 49-283 and which exist at the Site in concentrations that exceed CERCLA and WQARF regulatory limits.

39.     The Hazardous Substances were released from the Site as that terms is defined in 42 U.S.C. § 9601(22) and A.R.S. § 49-281(11).

40.     The State has incurred and will continue to incur costs for Response and Remedial Actions as those terms are defined in Sections 101(23), (24), and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24), and (25), and in A.R.S. § 49-285 attributable and as a result of the Releases and threatened Releases of Hazardous Substances on and from the Site. These costs include the costs incurred as it investigates, monitors, surveys, tests, and gathers information to identify the existence and extent of the release or threat of

1   release of hazardous substances and/or pollutants or contaminants; the source and nature

2   of the hazardous substances and/or pollutants or contaminants involved; and the extent of

3   any risk to the public health or welfare or the environment. In addition, the State has

4   expended funds for planning, legal, and other activities necessary and appropriate to

5   direct response actions and for enforcement purposes.

6       41.     Pursuant to CERCLA 107(a), 42 U.S.C. § 9607(a), the Defendants are

7   jointly and severally liable to the Plaintiffs for all removal, remedial, and response costs

8   incurred by the Plaintiffs in connection with the Site.

9       42.     Pursuant to A.R.S. § 49-285, the Defendants are strictly and severally liable

10  to the Plaintiffs for their proportionate share of the removal, remedial and response costs

11  incurred by the Plaintiffs in connection with the Site.

12      43.     The State's removal, response, and remedial actions with respect to the

13  Releases and threatened Releases of Hazardous Substances on and from the Site have

14  been necessary and are not inconsistent with the National Contingency Plan, 40 C.F.R.

15  Part 300, Appendix B, within the meaning of 42 U.S.C. §§ 9605, and 9607(a) and comply

16  with A.R.S. § 49-282.06.

17              **VI.    GENERAL ALLEGATIONS**

18      44.     The Plaintiffs seek a judgment ordering the Defendants to reimburse

19  Plaintiffs for the costs they have incurred and will incur in investigating, responding to,

20  removing and remediating the release or threat of release of hazardous substances.

21      45.     The Plaintiffs also seek, pursuant to 28 U.S.C. §§ 2201 *et seq.*, a

22  declaratory judgment that the Defendants are liable for future costs to be incurred by the

23  Plaintiffs for investigation, removal and remedial activities at the Site.

24      46.     The Plaintiffs further assert supplemental state law claims pursuant to the

25  Arizona Environmental Quality Act, as amended, specifically A.R.S. §§ 49-281 *et seq.*,

26  seeking recovery of remediation costs incurred and to be incurred at the Site.

## VII.   <u>COUNT ONE</u>

### (CERCLA Cost Recovery)

47.     Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

48.     The Defendants are owners, operators, generators, arrangers, or transporters of hazardous substances within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

49.     The Defendants are jointly and severally liable for the costs incurred by Plaintiffs in responding to the releases of hazardous substances into the environment at the Site.

WHEREFORE, having fully set forth their first cause of action, Plaintiffs pray as follows:

(a)     That the Court enter judgment against the Defendants for all the costs incurred by Plaintiffs in responding to releases or threatened releases of hazardous substances into the environment at the Site and from the Site.

(b)     That the Court award Plaintiffs prejudgment interest, and post-judgment interest to which they are entitled under CERCLA § 107(a), 42 U.S.C. § 9607(a);

(c)     That the Court award Plaintiffs their expert and attorneys' fees and other costs incurred in this action to the extent permitted by law; and

(d)     That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

## VIII.  <u>COUNT TWO</u>

### (Declaratory Judgment under CERCLA)

50.     Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 51 of this Complaint as though fully set forth herein.

51.     This second cause of action seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to adjudicate a question of actual controversy between Plaintiffs and the Defendants.

52.     Plaintiffs have incurred and will continue to incur costs of response as a result of releases of hazardous substances into the environment at the Site.

53.     The Defendants are strictly and severally liable for the costs incurred and to be incurred by Plaintiffs pursuant to 42 U.S.C. § 9607. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration of their rights with respect to the Defendants.

WHEREFORE, having fully set forth their second cause of action, Plaintiffs pray as follows:

(a)     That the Court enter judgment for Plaintiffs declaring that the Defendants are liable for all future response costs incurred by Plaintiffs in responding to releases of hazardous substances into the environment at the Site, and to the extent that such future costs are ascertainable, that such amount be determined at the time of trial;

(b)     That the Court award Plaintiffs their expert and attorneys' fees and other costs incurred in this action to the extent permitted by law; and

(c)     That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

### IX.     COUNT THREE
### (WQARF Cost Recovery)

54.     Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 55 of this Complaint as though fully set forth herein.

55.     Releases of hazardous substances into the environment have occurred at the Site within the meaning of A.R.S. §§ 49-281, 49-201 and 49-283.

56.     The Defendants are liable under A.R.S. § 49-283 as owners, operators, generators, arrangers, and/or transporters of hazardous substances which were placed or came to be located in or on the Site.

57.     The Defendants are strictly and severally liable under A.R.S. § 49-285 for their proportionate share of response costs incurred by the Plaintiffs.

WHEREFORE, having fully set forth their third cause of action, Plaintiffs pray as follows:

(a)     That the Court enter judgment against the Defendants to pay their several share of the remedial action costs incurred by Plaintiffs, the exact amount of such costs to be determined at the time of trial;

(b)     That the Court award Plaintiffs their expert and attorneys' fees and other costs incurred in this action to the extent permitted by law; and

(c)     That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

## X.     COUNT FOUR

### (Declaratory Judgment under WQARF)

58.     Plaintiffs incorporate each and every allegation contained in paragraphs 1 through 59 of this Complaint as though fully set forth herein.

59.     Plaintiffs have incurred and will continue to incur costs of response as a result of releases of hazardous substances into the environment at the Site.

60.     Plaintiffs are entitled to a declaration of their rights with respect to the Defendants regarding such costs.

WHEREFORE, having fully set forth their fourth cause of action, Plaintiffs pray as follows:

(a)     That the Court enter judgment for Plaintiffs declaring that the Defendants are strictly and severally liable for their proportionate share of future

18

response costs incurred by Plaintiffs in responding to releases of hazardous substances into the environment at or from the Site, and to the extent that such future costs are ascertainable, that such amount be determined at the time of trial;

(b)     That the Court award Plaintiffs their expert and attorneys' fees and other costs incurred in this action to the extent permitted by law; and

(c)     That the Court grant such other and further relief as the Court deems just and proper under the circumstances.

## XI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Court enter judgment against the Defendant:

A.     For recovery of its costs incurred in responding to Releases or Threatened Releases of hazardous substances at or from the Site as provided under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*;

B.     For a declaratory judgment that the State will continue to incur costs of a response as the result of releases of hazardous substances at the Site and the Defendants are liable for those costs and to the extent that such costs can be determined, that such amount be determined at the time of trial.

C.     For recovery of its costs incurred in responding to Releases or threatened Releases of hazardous substances at or from the Site as provided under the Water Quality Assurance Revolving Fund, A.R.S. § 49-281 *et seq.*;

D.     For the Plaintiff's costs; and,

1        E.      Such other additional relief as may be appropriate as this Court may deem

2  appropriate.

3

4        RESPECTFULLY SUBMITTED this 22nd day of October, 2010.

5

6                           Terry Goddard

                               Attorney General

7

8

                              /s/  Jeffrey D. Cantrell

9                           Jeffrey D. Cantrell

                           Tamara L. Huddleston

10                       Assistant Attorneys General

                         Office of the Arizona Attorney General

11                       Environmental Enforcement Section

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2

3          I hereby certify that on this 22nd day of October, 2010, I electronically filed the
attached document with the Court's ECF System.  I also mailed, via First Class U.S.
Mail, a copy of the foregoing document to the following parties:

4

5     The Honorable Lisa P. Jackson, Administrator
United States Environmental Protection Agency

6     Executive Communications Office
Mail Code A-101

7     Ariel Rios Building

8     401 M Street, S.W.
Washington, D.C. 20460-2601

9

10    The Honorable Eric H. Holder Jr.
U.S. Attorney General

11    U.S. Department of Justice
Constitution Avenue & Tenth Street N.W.

12    Washington, D.C. 20530-0001

13

14    Jared Blumenfeld
Regional Administrator, Region 9

15    United States Environmental Protection Agency
75 Hawthorne Street

16    San Francisco, California 94105-3901

17

18     /s/  Jeffrey D. Cantrell
_____

19    1146354

20

21

22

23

24

25

26