**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ASHTON COMPANY, INC., et.al.,<br><br>    Defendants.<br>_____<br>CITY OF TUCSON, et al.,<br><br>    Plaintiff-Intervenors,<br><br>vs.<br><br>BALDOR ELECTRIC COMPANY, et al.,<br><br>    Defendants in Intervention.<br>_____ | No. CIV 10-634-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the issue of whether the filing of Answers to the Complaints in Intervention and discovery is appropriate before consideration of the Motion to Enter Consent Decrees (Doc. 109). The parties were provided an opportunity to file briefs regarding the issues. Oral argument was presented to the Court on October 17, 2011.

Plaintiff State of Arizona ("the State") and Defendant Tucson Foundry & Manufacturing, Inc., and Industrial Pipe Fittings, LLC (collectively, "TF/IPF") have filed briefs asserting that neither answers nor discovery is appropriate prior to resolution of the Motion to Enter

Consent Decrees. Intervenors Tucson Airport Authority, Arizona Board of Regents, University of Arizona, Raytheon Company, Tomkins Industries, Inc., Tucson Electric Power Company, and Pima County ("Intervenors") have submitted a brief asserting that further information is needed for the Court to adequately determine whether the Consent Decrees should be entered.

The parties all appear to agree that the proper inquiry regarding the Motion to Enter Consent Decrees is whether the settlements are procedurally and substantively fair, reasonable, in the public interest, and are consistent with the polices of CERCLA. *State of Arizona v. Nucor Corp.*, 825 F.Supp. 1452 (D.Ariz. 1992), *aff'd on other grounds*, 66 F.3d 213 (9th Cir. 1995), *United States v. Montrose Chemical Corp. of Calif.*, 50 F.3d 741 (9th Cir. 1995).

Intervenors assert that answers and discovery are permissible and necessary. Intervenors assert that, under Fed.R.Civ.P. 12(a), there is no controversy before the Court and, under Fed.R.Civ.P. Rule 26(b)(1), they are entitled to discovery regarding nonprivileged facts relevant to their claim that the proposed consent decrees are not substantively or procedurally fair, reasonable, or consistent with the objectives of WQARF and CERCLA. Intervenors assert that inquiries into the information relied on by the State in developing the estimated remediation cost of $75 million and each settling party's allocated share would simply enable this Court and Intervenors to assess whether the consent decrees are substantively fair, an exercise which the Court must conduct. Additionally, the Intervenors disagree with the Court's assertion in the June 29, 2011, Order that discovery may not be appropriate and attempts to distinguish the cases cited in that Order.[1] However, Intervenors do not cite to any authority that found discovery to be appropriate in similar circumstances to the case at bar.

---

[1] For example, Intervenors point out that the court in *United States v. Wastecontrol of Fla., Inc.*, 730 F. Supp. 401, 404 (M.D. Fla. 1989), was in possession of the administrative record to consider in its review. However, the court did not state that all such information was needed in its consideration.

The State argues that, because the City of Tucson intervenors and Board of Regents, et al., intervenors, do not have a right to contribution, no purpose would be served by allowing discovery. The State asserts that, under CERCLA, parties are permitted to recover costs of recovery under 42 U.S.C. § 9607(a) and contribution under 42 U.S.C. § 9613(f). *United States v. Atlantic Research Corporation*, 551 U.S. 128, 131 (2007). The State points out that none of the Intervenors have asserted any current or potential claim for cost recovery under 42 U.S.C. § 9607(a).

As to claims for contribution, the State asserts that claims for contribution are controlled by 42 U.S.C. § 9613(f) which states, in part, that any "person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title during or following any civil action under 9606 of this title or under section 9607(a) of this title." The State points out that, in *Cooper Industries, Inc, v. Aviall Services, Inc.*, 543 US 157 (2004), the Supreme Court specifically addressed whether a private party that voluntarily incurred response costs but had not been sued under CERCLA could obtain contribution from other liable parties under 42 U.S.C. § 9613(f) and held that "contribution may only be sought subject to the specific conditions, namely 'during or following' a specific civil action." *Aviall* at 166. "Section 113(f)(1) … authorizes contribution claims only 'during or following' a civil action under §106 or 107(a) and it is undisputed that Aviall has never been subject to such an action. Aviall therefore has no §113(f)(1) claim." *Aviall* at 168. The State asserts that, because neither the City of Tucson nor the Board of Regents, *et al.*, have ever been the subject of a civil suit as required in 42 U.S.C. § 9613(f), they do not have a viable contribution claim. Indeed, the State points out that the "result of non-settlors possibly bearing a disproportionate liability for the open-ended costs of remediation is therefore consistent with the Statute's paradigm, which encourages the finality of early settlements." *United States v. Davis*, 261 F.3d 1, 28 (1st Cir. 2001). The State appears to agree that Pima County could have a contribution claim, but such a claim would breach the 2002 Consent Decree entered in CIV 00-574. State Brief, Doc. 157, Attachment.

The Court finds Intervenors' reliance on *Aerojet* to be misplaced. In relying on *Aerojet*,

- 3 -

1  Intervenors appear to be equating the discussion of whether intervention is appropriate as to
2  why discovery is appropriate.  During argument, the Court discussed with counsel that,
3  following the *Aerojet* remand, the district court did not permit discovery by the intervenors.
4  *See United States v. Andruss Family Trust*, 2011 WL 1334391 (C.D.Cal. 2011).  That court
5  discussed that discovery as to why decisions were made would not strengthen an argument
6  that a consent decree is unfair.  The court also pointed out that disclosure had been made –
7  further discovery would raise privilege issues and only shed minimal light on the issues.
8  Counsel for Tucson Airport Authority distinguished *Andruss Family Trust* on the basis that
9  more disclosure had been made in the *Andruss Family Trust* case.  However, the State
10 indicated that they have conducted interviews of more than 800 people and have disclosed
11 more than 100,000 pages of documents to Intervenors.  This is not disputed, but Intervenors
12 complain that the material is disorganized and only includes memoranda regarding the
13 interviews rather than the interviews themselves.  As in *Andruss Family Trust*, it appears that
14 additional disclosure would offer minimal additional information regarding the interviews
15 and the investigation that has already been conducted.

16  Intervenors assert that basic information is needed to evaluate the reasonableness and
17 fairness of the settlements in the Consent Decree and, therefore, answers to the Intervenor
18 Complaints and discovery prior to consideration of the Motion to Enter Consent Decrees are
19 needed.  Intervenors assert that the State has not provided sufficient information for the Court
20 to meaningfully apply the standards. Specifically, Intervenors point out that the State simply
21 identifies a list of categories of costs that would comprise the remedy and states that it
22 utilized "a generally accepted EPA methodology for assigning liability."  Doc. 109, p.7, ln.
23 4-11; Exh. C, p. C-1.  This does not provide the amount of the estimated cost for each
24 category, much less the required reasonable underlying basis for each such estimate.
25 Furthermore, the State does not offer an explanation of the basis for the allocation
26 percentages or even provide the allocation percentage as to each potentially responsible
27 party. Further, Intervenors assert that the State's reliance on Mr. Ernest Joseph Blankinship's
28 deposition testimony violates the Hon. Raner C. Collin's order that, if Mr. Blankinship

becomes unavailable, his "deposition shall not be admissible for any purpose . . . in any pending or subsequent federal or State judicial or administrative proceeding." MC 09-001-TUC-RCC, Doc. 134, pp. 8-9.

The State asserts, however, that all Intervenors were given access to the State's public records in conjunction with the State's Petition to Perpetuate Testimony of Mr. Blankinship and that, other than privileged documents, Intervenors have already received all documentation that the State relied upon for its settlement offers. Additionally, the State asserts that the investigation will take an additional three to five years to complete. Counsel for Pima County argues that, because the deposition of Mr. Blankinship is expected to be completed this year, an additional three to five years of investigation is not likely. However, the State points out that, for budgetary reasons, the projection is reasonable. In other words, even if the Court were to permit additional discovery, in light of the projected time for completion of the discovery and the State's assertion that it has disclosed all non-privileged documents, it appears only minimal additional information would be available within a reasonable time.

The Motion to Enter Consent Decrees summarily describes the methodology and provides some basis for the remediation costs:

> ADEQ reviewed the information in its files including interviews of over 800 witnesses and over 100,000 pages of documents. ADEQ then compiled that information and determined where gaps existed in its information to determine those areas where data was unknown and therefore where those uncertainties gave rise to risk in early settlements. Additionally, ADEQ analyzed the information about the Site to determine those areas about which it had no information and therefore where additional risk of early settlement may be present. Finally, a preliminary early allocation was performed in which a rough allocation of share was determined for each potentially responsible party based on its activities as a generator, transporter, owner or operator of the Site. This allocation used an established and accepted EPA model for allocations at landfill sites.

Doc. 109, p.12.

> Each Defendant's estimated share of the projected total cost of the remedy was calculated using the information from the files of ADEQ (containing interviews of over 800 witnesses and over 100,000 pages of documents) and using a generally accepted EPA methodology for assigning liability. Based upon a preliminary estimate of remedial action costs of $75 Million, the range of liability for the Defendants extended from 0.01% of the estimated total clean up costs to 0.2%, or as expressed in dollar figures, from $10,000.00 to $150,750.00.

1  *Id*. at p. 7. The Motion's Ex. C includes some details for the basis of the remediation costs.
2  Indeed, TF/IPF asserts that the State has provided the Court and parties with a description
3  of the analysis it performed in assessing proportionate shares of liability to be attributed to
4  the settling parties based on its estimates and available information and that deference to the
5  State's reasoned determination is required by law. *See, e.g., United States v. George A.*
6  *Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011); *SEC v. Randolph*, 736 F.2d 525, 529
7  (9th Cir. 1984) (emphasizing the need for "deference to the judgment of the government
8  agency which has negotiated and submitted the proposed judgment"). If the State and the
9  settling parties are incorrect, that is the risk taken by settling early (including the State's risk
10 of absorbing orphan shares). TF/IPF asserts that additional discovery will not change this.
11 Although Intervenors cite to *Montrose* for the assertion that a court may abuse its discretion
12 in approving a consent decree without adequate evidence, the *Montrose* court discussed how
13 the trial court was not even provided with the government's estimate of damages – there was
14 no discussion that supporting documentation for those estimates were needed to determine
15 fairness and reasonableness. Here, the government has provided some information that has
16 provided the basis for the damages and has indicated that it has used an EPA approved
17 methodology. The parties have not provided any authority to the Court that intervenors or
18 non-settling parties are entitled to disclosure of the specific methodology.

19     Additionally, the Court also considers that, as argued by TF/IPF, there is a strong public
20 policy in favor of early settlements. *See e.g. United States v. George A. Whiting Paper Co.*,
21 644 F.3d 368, 373 (7th Cir. 2011) (once state has explained the basis for its estimations, court
22 must defer to expertise of agency and federal policy encouraging settlement). Additionally,
23 TF/IPF makes an argument under A.R.S. 49-285(H) similar to the argument made by the
24 State that reallocation is not available in this case.

25

26     TF/IPF also argues that, because the State has asserted that it can only impose
27 proportional, several-only liability on any defendant, the State should be bound by that
28

- 6 -

assertion and, therefore, there is no need for contribution claims or discovery.[2] The State has not disputed this assertion and indeed, appears to agree with it. The Court notes that the Ninth Circuit Court of Appeals has recognized that statements by other government officials may be admissible as a statement by a party opponent. *United States v. Van Griffin*, 874 F.2d 634 (9th Cir. 1989); *see also, United States v. Kattar*, 840 F.2d 118, 130-31 (1st Cir. 1988), *citing United States v. Powers*, 467 F.2d 1089, 1097 (7th Cir. 1972) (Steven, J., dissenting) (government manifested belief in substance of documents by submitting them to other federal courts); *Williams v. Union Carbide Corp.*, 790 F.2d 552 (6th Cir. 1986).

When the Court considers the ongoing nature of the investigation by the State (including the minimal information that would be subject to discovery), the information already disclosed to Intervenors, including remediation costs and general methodology information (compared to *Montrose*), the statements by the State that any orphan shares will be borne by the taxpayers, and the public policy reasons for encouraging early settlements, the Court finds it is not appropriate to permit discovery by Intervenors. In light of this conclusion, the Court also finds that directing answers to the Intervenor Complaints to be filed will only result in unnecessary delay. The Court, therefore, declines to order answer to be filed and declines to order discovery.

In reaching this conclusion, the Court recognizes that Intervenors have argued that this Court has insufficient information before her to adequately consider the Motion to Enter Consent Decrees. Although the Court has found that Intervenors are not entitled to conduct discovery, the Court acknowledges that she must have sufficient information before her to determine whether the settlements are procedurally and substantively fair, reasonable, in the public interest, and are consistent with the polices of CERCLA. *Nucor Corp.*, 825 F.Supp. at 1456; *Montrose*, 50 F.3d at 746. While the Court recognizes the government is entitled to deference, *see e.g., Montrose*, 50 F.3d at 746, and environmental agency formulas should

---

[2]TF/IPF also asserts that the Intervenor Complaints should be dismissed – in effect, under Fed.R.Civ.P. 12(b)(6). The Court finds that determination of this issue would more appropriately be considered if/when answers or other response were ordered.

be upheld if there is a plausible explanation for it, *Davis*, 261 F.3d at 24, the Motion to Enter Consent Decrees filed in this case does not provide any details of the EPA formula used in this case and has not provided any explanation as to how this EPA formula was used in calculating appropriate settlement amounts. The Court finds it appropriate, therefore, to direct the State to supplement its Motion to Enter Consent Decrees with additional information regarding the EPA formula/methodology used to calculate settlement amounts.[3]

Further, the Court does find it appropriate for Intervenors to have an opportunity to respond to the Motion to Enter Consent Decrees although the response time has passed. Additionally, the Court finds it appropriate to provide Intervenors, including the City of Tucson who has already filed a response to the Motion to Enter Consent Decrees, an opportunity to respond to the State's supplemental filing.

The Court, therefore, will set a briefing schedule. The Court notes that the City of Tucson has requested oral argument. The Court declines to schedule oral argument at this time, but advises the parties and Intervenors that, if any other party or Intervenor seeks oral argument, they shall notify the Court.

Accordingly, IT IS ORDERED:

1. Answers to the Intervenor Complaints need not be filed.

2. The Court declines to permit discovery by Intervenors.

3. The State shall file a supplemental to its Motion to Enter Consent Decrees that provides additional information to the Court regarding the methodology used by the State to calculate the settling parties' shares on or before November 7, 2012.

4. Intervenors shall file any response to the Motion to Enter Consent Decrees and supplemental filing on or before November 25, 2012.

---

[3] The Court declines to specify what additional information regarding the methodology the State should provide (e.g., affidavit, policy statement describing EPA formula, calculation), but advises the State that the Court cannot grant the Motion to Enter Consent Decrees if inadequate information is presented to permit the Court to determine whether the settlements are procedurally and substantively fair, reasonable, in the public interest, and are consistent with the polices of CERCLA.

1   5.   The State shall file any reply on or before December 5, 2012.

2   DATED this 20th day of October, 2011.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge