1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona; State of Arizona *ex rel.* Benjamin H. Grumbles, Director, Arizona Department of Environmental Quality,<br><br>Plaintiffs,<br><br>v.<br><br>Baldor Electric Company, an Arkansas corporation, successor by merger to Reliance Electric Company, a Delaware corporation,,<br><br>Defendant. | No.  4:10-CV-00634-CKJ<br><br>**CONSENT DECREE** |

# TABLE OF CONTENTS

I.       RECITALS ........................................................................................ 2

II.      INCORPORATION OF RECITALS ............................................. 3

III.     JURISDICTION ............................................................................. 3

IV.     DEFINITIONS ................................................................................ 4

V.       SETTLEMENT AMOUNT ............................................................ 7

VI.     NO ADMISSION OF LIABILITY ................................................ 8

VII.    COVENANT NOT TO SUE ......................................................... 9

VIII.   CONTRIBUTION PROTECTION ............................................... 9

IX.     RESERVATION OF RIGHTS ...................................................... 10

X.       ALLOCATION OF LIABILITY .................................................. 10

XI.     DISMISSAL OF CLAIMS ............................................................ 10

XII.    FAILURE TO COMPLY WITH REQUIREMENTS  OF CONSENT DECREE ........................................................................................ 11

XIII.   WITHDRAWING AND VOIDING  THIS CONSENT DECREE ............ 12

XIV.   COMPLETE AGREEMENT......................................................... 12

XV.    BINDING EFFECT ....................................................................... 12

XVI.   MODIFICATIONS ........................................................................ 13

XVII.   COOPERATION AND ACCESS  TO INFORMATION ......................... 13

XVIII.   LODGING AND OPPORTUNITY FOR  PUBLIC COMMENT ............ 15

XIX.   NOTIFICATION ........................................................................... 16

XX.    NO PREVAILING PARTY .......................................................... 17

XXI.   GOVERNING LAW ...................................................................... 17

XXII.   AUTHORIZATION ...................................................................... 17

1

# I. RECITALS

A.     The State of Arizona, on behalf of the Director of the Arizona Department of Environmental Quality ("State"), has filed a complaint against Baldor Electric Company ("Settlor"), pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* ("CERCLA") and the Water Quality Assurance Revolving Fund, A.R.S. § 49-281 *et seq.* ("WQARF"), seeking, among other things, money damages and a declaratory judgment finding Settlor liable for remedial action and response costs incurred and to be incurred by the State and a judgment ordering Settlor to reimburse the State for remedial action and response costs incurred in response to releases and threatened releases of hazardous substances from the Site known as the Broadway Pantano WQARF Registry Site.

B.     The State alleges in its Complaint that releases of hazardous substances occurred at the Site, the Site is a facility, as defined by WQARF, A.R.S. § 49-281, and CERCLA, 42 U.S.C. § 9601(9), and Settlor is a responsible party pursuant to WQARF, A.R.S. § 49-283 and CERCLA, 42 U.S.C. § 9607(a).

C.     The Arizona Department of Environmental Quality ("ADEQ") has undertaken remedial actions in an attempt to determine the nature and extent of the releases and threatened releases of hazardous substances at the Site.

D.     On June 22, 2009, the Governor of the State of Arizona designated Benjamin H. Grumbles as Director of the ADEQ, and on June 23, 2009 designated Mr. Grumbles as the Natural Resource Trustee for the State of Arizona pursuant to CERCLA, 42 U.S.C. § 9607(f)(2)(B). Director Grumbles is authorized to execute and enter into this Consent Decree and execute releases from liability.

E.     The Parties desire to establish certain rights and obligations between themselves with respect to the claims asserted in the State's Complaint in connection

with or relating to the known hazardous substance contamination currently existing at the Site.

F.      Upon judicial approval of this Consent Decree, Settlor will be entitled to contribution protection pursuant to CERCLA, 42 U.S.C. § 9613(f), and WQARF, A.R.S. § 49-292, to the fullest extent of the law.

G.      The Parties agree that settlement of this matter and entry of this Consent Decree is made in good faith in an effort to avoid further expenses of protracted litigation, without any admission of any liability by Settlor for any purpose.

H.      The Parties agree, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and at arms' length and that this Consent Decree is fair, reasonable, and in the public interest, and that its implementation will expedite remediation of the Site.

I.      The Parties consent to the entry of this Consent Decree and agree to be bound by its terms.

**NOW, THEREFORE, IT IS ORDERED BY THE COURT AND AGREED BY THE PARTIES AS FOLLOWS:**

**II. INCORPORATION OF RECITALS**

1.      The Recitals are a material part of this Consent Decree and are incorporated herein by reference.

**III. JURISDICTION**

2.      This Court has federal question jurisdiction over the subject matter of this action under 42 U.S.C. §§ 9607 and 9613(b), and supplemental jurisdiction over State law (WQARF, A.R.S. § 49-292) claims pursuant to 28 U.S.C. §§ 1331, 1367, and 1391. Settlor waives all objections to jurisdiction and venue and all available defenses under Fed.R.Civ.P. Rule 12 (b). The Parties consent to and shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## IV. DEFINITIONS

3.     Unless otherwise expressly provided in this Consent Decree, the words and terms used in this Consent Decree have the meanings assigned to them under WQARF and CERCLA as of the date this Consent Decree becomes final. Where a conflict exists between the definition of a word or term used under WQARF and CERCLA, the definition under WQARF shall control.

4.     "ADEQ" means the Arizona Department of Environmental Quality.

5.     "Business Records" means every document and paper of every kind within Settlor's and its employees, agents, contractors, and appointed and elected officials' possession, custody, or control and wherever located, including, but not limited to, documents kept in the ordinary course of business, documents obtained from third persons, operating records, financial records, and similar documents and information. "Business Records" specifically includes facts, opinions, and other data contained in documents and reports prepared by Settlor's employees, agents, and contractors with respect to environmental conditions at the Site. "Business Records" does not include documents subject to Settlor's attorney-client privilege.

6.     "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (1995), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613 (1986), as amended from time to time and all rules, regulations, and guidelines promulgated thereunder.

7.     "Consent Decree" means this Consent Decree and all exhibits attached hereto. In the event of a conflict between this Consent Decree and any exhibit, the Consent Decree shall control.

8.     "Covered Matters" means each civil claim and civil cause of action under WQARF and CERCLA alleged by the State in its Complaint against Settlor arising out of known releases or disposals of any hazardous substance at the Site before the

4

effective date of this Consent Decree and the migration of the known hazardous substances beyond the boundaries of the Site. "Covered Matters" shall be strictly construed and does not include:

A. any claim arising out of Settlor's failure to comply with any term of or obligation arising out of this Consent Decree or any access agreement entered into pursuant to this Consent Decree;

B. any liability not expressly included within Covered Matters;

C. any liability for any hazardous substance or other contamination at the Site that is not on the list attached hereto and marked Exhibit 1;

D. any liability arising out of any criminal act;

E. any liability arising under laws other than WQARF and CERCLA or arising out of the violation of any state or federal law, rule, or regulation after the effective date of this Consent Decree;

F. any liability arising out of the release, disposal, generation, treatment, storage, or transportation by Settlor of any hazardous substance or other contaminant at the Site after the effective date of this Consent Decree or arising out of Settlor's exacerbation of any hazardous substance or other contaminant at the Site after the effective date of this Consent Decree;

G. any liability arising out of the release, disposal, generation, treatment, storage, or transportation by Settlor of any hazardous substance or other contaminant on real property other than the Site at any time or any liability arising out of the exacerbation of any hazardous substance or other contaminant on real property other than the Site at any time;

H. any liability for any personal injuries or property damage arising out of the release or threat of a release of a hazardous substance or other contaminant or Settlor's presence at the Site; and

5

I.     damages to, destruction of, and/or loss of the State's natural resources at or related to the Site, including the costs of any natural resource damage assessments.

9.     "Day" means a calendar day. In computing any period of time under this Consent Decree, the day of the act from which the designated time period begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, Sunday, or legal holiday, in which case the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.

10.    "Director" means the Director of ADEQ.

11.    "Document" means all written materials, papers, audio tapes, video tapes, magnetic tapes, compact discs, computer discs, photographs, reports, electronic data, and similar items that are not subject to Settlor's attorney-client privilege.

12.    "Effective date of this Consent Decree" means the date this Consent Decree is signed by the Court and entered in the court's docket by the clerk of the court, regardless whether a subsequent appeal is filed or other challenge is made to this Consent Decree or this Action.

13.    "Parties" means the State and the Settlor (each individually referred to as a "Party").

14.    "Remedial Action Costs" means all costs incurred or to be incurred by any person, including the State, except those costs classified as nonrecoverable costs by A.R.S. § 49-281(9) in responding to releases or threats of releases of hazardous substances at or from the Site.

15.    "Settlor" means Baldor Electric Company, an Arkansas corporation, successor by merger to Reliance Electric Company, a Delaware corporation.

16.    "Site" means the Broadway Pantano WQARF Registry Site, Site Code #100053-00, located in East-central Tucson, Pima County, Arizona and is approximately bounded by Speedway Boulevard to the north, Pantano Wash to the east, Calle Madero to the south (south of Broadway Boulevard), and Van Buren Avenue to

the west (west of Wilmot Road), or Kolb Avenue for the portion of the Site to the south of Broadway Boulevard.  As used herein,  Site means and includes all areas where hazardous substances, pollutants, or contaminants originally disposed at the Broadway Pantano WQARF Registry Site have come to be located, including but not limited to the full geographical areal extent of contamination as depicted on the map attached hereto as Exhibit 2.

17.   "State" means the State of Arizona and the ADEQ.

18.   "WQARF" means the Water Quality Assurance Revolving Fund, A.R.S. §§ 49-281 *et seq.*, as amended, and all rules, regulations, and guidelines promulgated thereunder.

## V.  SETTLEMENT AMOUNT

19.   Settlor shall pay to the State the amount of Ten Thousand Dollars ($10,000.00) (the "Settlement Amount"). The Settlement Amount shall be paid in the form of one (1) cashier's check, certified check, or money order made payable to the "State of Arizona". Settlor shall mail or hand-deliver the check or money order and an accompanying cover letter within ten (10) days after the effective date of this Consent Decree to:

If mailed, send to:

Mike Clark, Chief Financial Officer
Attn: Accounts Receivable
Arizona Department of Environmental Quality
P.O. Box 18228
Phoenix, Arizona 85007

If hand-delivered, send to:

Mike Clark, Chief Financial Officer
Attn: Accounts Receivable
Arizona Department of Environmental Quality
1110 W. Washington
Phoenix, Arizona 85007

20.    The Settlement Amount shall reference this Consent Decree and Settlor's WQARF facility identification number, 100053-00. Copies of the Settlement Amount and all written communications with ADEQ related to this Consent Decree and this Action shall be delivered to:

> Arizona Department of Environmental Quality
> Attn: Remedial Projects Section Manager
> 1110 W. Washington
> Phoenix, Arizona 85007

21.    The Parties agree that ADEQ will determine that portion of the Settlement Amount that will reimburse the State for its past costs and that portion which be used for future costs of Remedial Actions at the Site. That portion which represents past costs shall be deposited into the WQARF fund authorized under A.R.S. § 49-282 and used in any manner authorized by law. That portion which represents the future costs of Remedial Actions shall be deposited into a site specific account to be used for future Remedial actions pursuant to A.R.S. § 49-294. The parties expressly agree that a primary goal and material provision of this Agreement is to provide the State with funds to cover future Remedial Actions at the Site.

22.    Settlor shall advance all filing fees and other costs payable to the "Clerk of the Court" in this action.

## VI. NO ADMISSION OF LIABILITY

23.    The payment of the Settlement Amount and the assumption of other obligations by Settlor in this Decree are not to be construed as an admission of liability for any purposes by Settlor, by whom liability is expressly denied. This Consent Decree shall not be offered into evidence or otherwise deemed as an admission of liability by Settlor in any judicial or administrative proceeding as to the fact or extent of its alleged liability with respect to Covered Matters.

## VII. COVENANT NOT TO SUE

24.     Settlor's assumption of the obligations under this Consent Decree by payment of the Settlement Amount constitutes adequate consideration for the covenant not to sue and contribution protection granted to Settlor.

25.     Except as specifically provided in Section IX ("Reservation of Rights"), the State covenants not to sue Settlor under WQARF or CERCLA based upon any claim or cause of action arising out of the Covered Matters except, as provided in A.R.S. § 49-292(B), this covenant not to sue shall not prevent the director from suing the Settlor concerning future liability from the release or threatened release that is the subject of this covenant if the liability arises out of conditions that are unknown to the director at the time the director enters into this covenant.

26.     Settlor covenants not to sue the State, its agencies, department officials, employees, contractors or agents under WQARF or CERCLA based upon any claim or cause of action arising out of Covered Matters.

27.     Nothing in this Consent Decree shall be construed as granting a covenant not to sue, contribution protection, or release of any kind to any person who is not a party to this Consent Decree. This Consent Decree applies only to the State and Settlor and does not release or affect in any way the liability of any other person, including Settlor's insurers and sureties, if any. Except as otherwise provided in this Consent Decree, the Parties reserve the right to bring an action against any person who is not a party to this Consent Decree.

## VIII. CONTRIBUTION PROTECTION

28.     The entry of this Consent Decree shall constitute a judicially approved settlement that resolves Settlor's liability as to Covered Matters as well as provides contribution protection pursuant to A.R.S. § 49-292 and CERCLA, 42 U.S.C. § 9613, to the fullest extent of the law.

## IX. RESERVATION OF RIGHTS

29.    The covenant not to sue and contribution protection granted to Settlor are valid only as to Covered Matters. The State expressly reserves all rights of action against Settlor with respect to matters not covered by this Consent Decree.

30.    Except as otherwise provided in this Consent Decree, Settlor reserves all rights and defenses to liabilities that it has under CERCLA, WQARF, and the Common Law.

## X.  ALLOCATION OF LIABILITY

31.    The remedial investigation and feasibility study conducted by the State may establish facts which cause the Director to determine that cost recovery is appropriate and that Settlor should be assigned a proportionate share of liability pursuant to A.R.S. § 49-287.04(C) in order to achieve the 100% cost recovery allocation required by A.R.S. § 49-287.05. Settlor waives all right to challenge the Director's determination of Settlor's proportionate share of liability and the Director's assignment of its allocated share of remedial action costs, whether such right is by way of participation in settlement discussions, mediation or settlement conferences, an allocation hearing conducted pursuant to A.R.S. § 49-287.06, or the filing of a judicial appeal as provided in A.R.S. § 49-287.07.

32.    If Settlor's allocated share is determined by the Director or an allocator, whichever occurs later, to be greater  than the Settlement Amount, the difference shall be deemed an orphan share of liability pursuant to A.R.S. § 49-281(10).

33.    If Settlor's allocated share is determined by the Director or an allocator, whichever occurs later, to be less than the Settlement Amount, Settlor shall have no recourse against the State nor any right of any reimbursement or credit of any kind from the State or WQARF for all or part of the amount paid in excess of the allocated share.

## XI. DISMISSAL OF CLAIMS

34.    Settlor shall not initiate any claim relating to Covered Matters against allegedly liable parties, including any other settlors, persons, or entities, in this action or

otherwise, either directly or by assignment, except in the event the contribution protection conferred on Settlor in this Consent Decree fails.  Nothing in this section shall bar Settlor from initiating any claim against its insuror, guarantor, or surety.

## XII. FAILURE TO COMPLY WITH REQUIREMENTS OF CONSENT DECREE

35.     In the event the Settlement Amount is not received when due, interest and late fees shall accrue on the unpaid balance from the date due through the date of payment at the rate specified in A.R.S. § 49-113 (B), provided, however, that all amounts paid pursuant to this Consent Decree shall be deposited pursuant to the provisions of Section V ("Settlement Amount").

36.     If the Settlement Amount is not paid by the due date, Settlor shall pay late charges in addition to the interest required by this Section, of $1,000.00 per day that such payment is late. Late charges are due and payable thirty (30) days from the date of the demand for payment by the State. All payments to the State shall be made by certified or cashiers check made payable to the "State of Arizona" in accordance with the terms of Section V (Settlement Amount) of this Consent Decree for deposit into a special WQARF account. All late payments shall be deposited into the State General Fund.

37.     Late charges shall accrue regardless of whether the State has notified Settlor of the violation or made a demand for payment. Late charges shall begin to accrue on the day after payment is due and shall continue to accrue until payment in full is received by ADEQ.

38.     Late charges and interest shall be in addition to any other remedies available to the State by virtue of Settlor's failure to comply with this Consent Decree.

39.     If the State brings an action to enforce this Consent Decree, Settlor shall reimburse the State for all costs of such action, including but not limited to reasonable attorneys' fees and costs.

## XIII. WITHDRAWING AND VOIDING
## THIS CONSENT DECREE

40.     If this consent decree is reversed or modified on appeal, either the State or Settlor may withdraw from this Consent Decree. The State shall retain the Settlement Amount, if previously paid, and Settlor shall receive no benefit under this Consent Decree, except a credit equal to the Settlement Amount against any WQARF or CERCLA liability Settlor may have to the State.

41.     If Settlor fails to satisfy any obligation under this Consent Decree, the State may void this Consent Decree. If this Consent Decree is voided, the State shall retain the Settlement Amount and Settlor shall receive no benefit under this Consent Decree, except a credit equal to the Settlement Amount against any WQARF or CERCLA liability the Settlor may have to the State with respect to the Site.

## XIV. COMPLETE AGREEMENT

42.     This Consent Decree and its exhibits constitute the complete settlement agreement between the State and Settlor as to Covered Maters, and supersedes all previous agreements or understandings, whether oral or written. Except as provided in Section XVI ("Modifications") of this Consent Decree, no modification shall be made to this Consent Decree without written notification to and written approval of the State and Settlor. Nothing in this Section shall be deemed to alter the Court's power to supervise or modify this Consent Decree.

## XV. BINDING EFFECT

43.     This Consent Decree shall apply to and be binding upon the Parties, their successors and assigns. No change in ownership or corporate status of a Party, including, any transfer of assets or real or personal property, shall in any way alter Settlor's obligations under this Consent Decree. Settlor shall provide a copy of this Consent Decree to each successor and assign.

12

## XVI. MODIFICATIONS

44.    If the Court modifies or fails to approve this Consent Decree as lodged, either the State or Settlor may withdraw from this Consent Decree. Neither Party shall appeal the Court's decision.

45.    Except as otherwise provided in this Consent Decree, neither the State nor Settlor may withdraw from or modify this Consent Decree after it has been signed by the Parties and lodged with the Court. After this Consent Decree is signed, but prior to its being lodged with the Court, the Parties may modify this Consent Decree only if the modification is in writing, signed by the Parties, and lodged with the Court.

## XVII. COOPERATION AND ACCESS
## TO INFORMATION

46.    Settlor shall cooperate with the State and grant the State and its representatives, authorized agents, attorneys, investigators, consultants, advisors, and contractors prompt access to Settlor's non-privileged Business Records, Documents, and such other information relating to the release, disposal, generation, treatment, storage, or transportation of any hazardous substance or other contaminant at the Site. Settlor's cooperation shall include, but not be limited to:

    a.    making all non privileged records, Business Records, Documents and other information available to ADEQ in the State of Arizona;

    b.    providing the State and its representatives, authorized agents, attorneys, investigators, consultants, advisors, and contractors prompt access to Settlor's non-privileged Business Records, Documents, and other information for the purposes of inspection and copying;

    c.    making Settlor's current and future employees, agents, contractors, officers, directors, and appointed and elected officials who may have knowledge of relevant facts reasonably available for personal interviews by representatives, authorized agents, attorneys, investigators, consultants, advisors, and contractors of the State,

13

d.     identifying and attempting to locate Settlor's former employees, agents, contractors, officers, directors, and appointed and elected officials who may have knowledge of facts related to the release, disposal, generation, treatment, storage, or transportation of any hazardous substance or other contaminant at the Site.

e.     cooperating with and providing reasonable assistance to the State in connection with any investigation related to the release, disposal, generation, treatment, storage or transportation of any hazardous substance or other contaminant at the Site and in preparing for any hearing, allocation, or other proceeding related to the Site, and,

f.     waiving any objection or right of confidentiality and granting the State the right to communicate with and interview Settlor's former, current, and future employees, agents, contractors, officers, directors, and appointed and elected officials regarding any knowledge of facts, opinions, and conclusions they may have related to the release, disposal, generation, treatment, storage, or transportation of any hazardous substance or other contaminant at the Site.  Settlor agrees not to assert any claim of privilege or confidentiality to any fact, data, or technical opinions or conclusions regarding the conditions, releases at the Site, how hazardous substances came to be at the Site, liability of any person or the ability of any person to pay for or undertake remedial actions at the Site.

47.     Settlor represents and warrants that as of June 18, 2010, neither Settlor nor any person has or will alter, mutilate, discard, destroy, or otherwise dispose of any Business Record, Document, or other information relating to the release, disposal, generation, treatment, storage, or transportation of any hazardous substance or other contaminant at the Site. For ten (10) years after the date of entry of this Consent Decree, Settlor shall retain and, upon request, grant the State and its authorized agents, attorneys, investigators, and contractors prompt access to all such Business Records,

14

Documents, or other information for inspection and copying in Arizona. Settlor shall maintain and preserve all such Business Records, Documents, or other information where such Business Records are normally kept. In the event ADEQ requests to inspect the Business Records, Documents, or other information, Settlor shall make them available to ADEQ in the State of Arizona. If Settlor intends to destroy or otherwise dispose of any such Business Records, Documents, or other information at any time after expiration of the ten-year retention period, Settlor shall deliver written notice of such destruction or disposal to the State at least thirty (30) days prior to the date of such destruction or disposal and the State shall have the right to take immediate possession of and title to all such Business Records, Documents, or other information free of charge.

48.     By signing this Consent Decree, Settlor certifies that it  will fully comply with any and all ADEQ requests for information regarding the Site pursuant to A.R.S. § 49-288.

## XVIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

49.     Before this Consent Decree can be approved or entered by the Court, the public must be given notice of this settlement and an opportunity to review the terms of this Consent Decree and file written comments with the Court. Therefore, within fifteen (15) days of filing a copy of this Consent Decree with the Court, Settlor shall, at its own expense, publish notice of this settlement at least one (1) time in a newspaper of general circulation in the county in which the Site is located and provide notice to any other interested person identified by the State to Settlor prior to the lodging of this Consent Decree. The notice shall state the material terms of this Consent Decree and that the entire Consent Decree is available for review and comment. Settlor shall deliver a copy of the notice to the State at least five (5) days before it is published and ADEQ may furnish the notice to any person it deems appropriate and may post it on ADEQ's web site. Settlor bears the risk that the publication is defective or otherwise insufficient.

50.     The public comment period shall run for thirty (30) days from the date the notice of this settlement is last published. All comments shall be submitted to the Court and to the parties. The State may withdraw from this settlement and Consent Decree after considering the public comments, if any. After the public comment period expires, the State may determine that this settlement is in the public interest, lodge this Consent Decree with the Court, and petition the Court for its entry.

## XIX. NOTIFICATION

51.     Whenever notice is required to be given under this Consent Decree, it shall be in writing and delivered to the persons at the addresses identified below. If the notice is hand-delivered, it is deemed given and effective on the date it is received. If the notice is sent by certified mail, it is deemed given and effective on the date the return receipt is signed. If the return receipt is either not signed or signed but not dated, the notice is deemed given and effective ten (10) days after the date the notice is postmarked by the United States Postal Service.

52.     Notices and other written communications between the Parties related to this Consent Decree shall be delivered to the following persons at the following addresses:

To the State:

> Arizona Department of Environmental Quality
> Attn: Remedial Projects Section Manager
> 1110 W. Washington
> Phoenix, Arizona 85007

To Settlor:

> Baldor Electric Company
> Attn: Ronald E. Tucker, President
> 5711 R.S. Boreham, Jr. St
> Fort Smith, AR 72901

Copies of all such notices and other communications shall be simultaneously sent by regular first class mail, postage prepaid, to:

Arizona Department of Environmental Quality

        Ana I. Vargas, Manager
        Legal Support Unit
        Arizona Department of Environmental Quality
        1110 W. Washington
        Phoenix, Arizona 85007

Attorney for Plaintiff

        Jeffrey D. Cantrell
        Assistant Attorney General
        Office of the Attorney General
        1275 West Washington Street
        Phoenix, Arizona 85007

Attorney for Settlor

        Edward A. Cohen
        Thompson Coburn LLP
        One US Bank Plaza
        St. Louis, MO 63101

If either Party changes its address, written notice of the change shall be delivered to the other Party.

## XX. NO PREVAILING PARTY

53.    Neither the State nor Settlor is the prevailing party in this Action. Except as otherwise provided herein, neither Party shall assert any claim against the other Party for attorneys' fees, expert witness fees, or any other cost or expense incurred in connection with this settlement, Action, or Consent Decree.

## XXI. GOVERNING LAW

54.    This Consent Decree shall be governed, interpreted, and enforced according to the laws of the State of Arizona.

## XXII. AUTHORIZATION

55.    The undersigned represent and warrant that they are expressly authorized to execute and enter into this Consent Decree and the Access Agreement and to legally bind the Parties thereunder.

17

**This Consent Decree is agreed to and approved as to form and content by:**

**The State Of Arizona and Arizona Department of Environmental Quality**

By: _Veronica Garcia_ Date: _9/27/10_
for   Amanda E. Stone, Director
      Waste Program Division

**As To Baldor Electric Company**

By: _Tracy Long_ Date: _9/17/10_
    Tracy Long

Its   Vice-President

Dated this _21st_ day of _February_, 2012

_____
The Honorable _____,
United States District Court

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

## EXHIBIT 1

### List of Existing Contamination

| Contaminant | Reference | Contaminant | Reference |
|---|---|---|---|
| 1,1,1,2-Tetrachloroethane | 4 | Chloroform | 1, 2 |
| 1,1,1-Trichloroethane (1,1,1-TCA) | 1, 2 | Chloromethane (Methyl chloride) | 1, 2 |
| 1,1,2-Trichloroethane | 4 | Chromium | 3 |
| 1,1,2-Trichlorotrifluoroethane | 4 | cis-1,2-Dichloroethene | 1 |
| 1,1-Dichloroethane | 1 | Cyclohexane | 2 |
| 1,1-Dichloroethene | 1 | Dichlorodifluoromethane (Freon 12) | 1, 2 |
| 1,2,4-Trimethylbenzene (Pseudocumene) | 1, 2 | Dieldrin | 3 |
| 1,2-Dibromoethane (EDB) | 4 | Endosulfan II | 3 |
| 1,2-Dichlorobenzene | 4 | Endrin aldehyde | 3 |
| 1,2-Dichloroethane | 4 | Endrine ketone | 3 |
| 1,2-Dichloropropane | 2 | Ethylbenzene | 1, 2 |
| 1,3,5-Trimethylbenzene (Mesitylene) | 1, 2 | Freon 114 (1,2-Dichlorotetrafluoroethane) | 1, 2 |
| 1,3-Dichlorobenzene | 4 | gamma-Chlordane | 3 |
| 1,4-Dichlorobenzene | 1, 2 | Heptachlor epoxide | 3 |
| 2-Propanol | 2 | Heptane | 2 |
| 4,4'-DDD | 3 | Lead | 3 |
| 4,4'-DDE | 3 | Mercury | 3 |
| 4,4'-DDT | 3 | Methoxychlor | 3 |
| 4-Ethyltoluene | 2 | Methyl Butyl Ketone | 2 |
| Acetone | 2 | Methyl Ethyl Ketone | 2 |
| alpha-Chlordane | 3 | Methylene chloride (Dichloromethane) | 1, 2 |
| Aroclor 1242 | 3 | Naphthalene | 2 |
| Aroclor 1254 | 3 | n-Hexane | 2 |
| Aroclor 1260 | 3 | Silver | 3 |
| Arsenic | 3 | Styrene | 1, 2 |
| Barium | 3 | Tetrachloroethene (PCE) | 1, 2 |
| Benzene | 1, 2 | Toluene | 1, 2 |
| Benzyl Chloride | 2 | trans-1,3-Dichloropropene | 2 |
| Bis(2-ethylhexyl)phthalate | 3 | Trichloroethene (TCE) | 1, 2 |
| Cadmium | 3 | Trichlorofluoromethane (Freon 11) | 1, 2 |
| Carbon Disulfide | 2 | Vinyl Chloride | 1 |
| Carbon Tetrachloride | 5 | Xylenes, Total | 1, 2 |
| Chlorobenzene | 1 | | |
| Chloroethane | 4 | | |

Please note potential contaminants from the disposal of waste into the Broadway North Landfill (BNL) may not be listed if analyses for the contaminants were not performed or if the distribution of sample locations representative of the contaminant population was incomplete.

References

1.   Technical Memorandum.  *Summary of the Soil Gas Surface Flux Chamber Testing Conducted at the Closed Broadway North Landfill, Broadway-Pantano WQARF Site, Tucson, Arizona.* SECOR International Incorporated.  August 6, 2007.

2. Technical Memorandum.  *Summary of Shallow Probe Soil Gas Testing Conducted at the Closed Broadway North Landfill, Broadway-Pantano WQARF Site, Tucson, Arizona.*  SECOR International Incorporated.  July 3, 2006.

3. Technical Memorandum.  *Summary of Surface Soil Sampling Conducted at the Closed Broadway North Landfill, Broadway-Pantano WQARF Site, Tucson, Arizona.*  SECOR International Incorporated.  October 5, 2004.

4. Summary Report.  *Fourth Rebound Test Report, Broadway North Landfill Operable Unit, Soil Vapor Extraction and Air Injection System, Broadway-Pantano WQARF Site.*  SECOR International Incorporated.  September 11, 2006.

5. Progress Report.  *SVE/AI Progress and Performance Report, October 1, 2000, through November 7, 2000, Broadway North Landfill.*  Hydro Geo Chem, Inc.  December 27, 2000.

# Exhibit 2



Broadway - Pantano WQARF Site